UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACKIE DELMAS MASON,

        Plaintiff,

v.                                  Case No. 19-cv-1103-pp

C. CLOVER, *et al.*,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING MOTION TO DISMISS DEFENDANT (DKT. NO. 7), DENYING WITHOUT PREJUDICE MOTION FOR EMERGENCY COURT ACTION (DKT. NO. 9), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND REQUIRING PLAINTIFF TO ELECT CAUSE OF ACTION AND FILE AMENDED COMPLAINT**

The plaintiff, who is confined at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, his motion to dismiss a defendant, dkt. no. 7 and his motion for emergency court action, dkt. no. 8. It also screens his complaint. Dkt. No. 1.

**I. Motion for Leave to Proceed without Prepaying Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 31, 2019 the court ordered the plaintiff to pay an initial partial filing fee of $30.09. Dkt. No. 5. The court received that fee on August 12, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and required him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.  Screening the Complaint**

   A.  Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff has sued ten defendants: C. Clover, J. Berres, Brian Foster, "Traxler," Randall Bouzek, Keith Immerfall, Randy Mueller, "Names Unknown," Kevin A. Carr and the State of Wisconsin Department of Corrections. Dkt. No. 1 at 2. Most of the defendants are employees of the Department of Corrections, but the plaintiff says that "Traxler" is an inmate at Waupun. Id. at 3.

The plaintiff says that he has been an inmate at Waupun since May 2013. Dkt. No. 1 at 4. He says that "[d]uring this time"—presumably the almost seven years he's been at Waupun—he "is regularly forced to breathe highly toxic polluted air" from exhaust emissions flowing into the prison living areas. Id. He says "[f]rom a location in the prison, staff is withholding;" the court infers that the plaintiff is alleging that prison staff know where the fumes are coming from but won't tell inmates. The plaintiff alleges that the fumes cause him severe headaches, chest pain, burning in his chest, eyes, and throat, and difficulty breathing. Id. The plaintiff says that he complained to Warden Brian

3

Foster, building and maintenance superintendent C. Clover, and supervisor J. Berres. Id.

The plaintiff asserts that on April 2, 2019—after he'd gone through the inmate complaint process—"Building and Grounds Supervisor J. Berres" visited him in the Northwest cell hall regarding his complaints about the emissions. Id. at 5. The plaintiff says that Sgt. Randall Bouzek was working as the lead officer on the cell hall that day; he asserts that both Berres and Bouzek "appeared extremely agitated about the plaintiff's complaints." Id.

The plaintiff contends that a month later, on May 2, 2019, Bouzek had Traxler, a fellow inmate who (the plaintiff alleges) "is a known snitch of Bouzek's" and who was working as a pass runner, come to the plaintiff's cell at 7:00 a.m. Id. The plaintiff alleges that Traxler lied to the plaintiff, falsely telling the plaintiff that he had an 8:00 a.m. pass to go to "music-hobby." Id. Thinking he was headed to hobby, the plaintiff (who is fifty-nine years old and says he has a weakened bladder, an enlarged prostate, moderate loss of kidney function and incontinence) urinated twice. Id. When the plaintiff went out to get the pass, "a smiling" Bouzek and Traxler told him that he was actually going on a pass to give a urine sample for drug testing purposes. Id. The plaintiff says he tried for an hour to give a sample; he tried so hard that the need to defecate arose. Id. The plaintiff says he explained the situation to Sgt. Keith Immerfall, who refused to let the plaintiff relieve himself and "ordered" him to keep trying. Id. The plaintiff tried to the point that he defecated on himself and was unable to provide an adequate sample. Id.

The plaintiff says that at around 10:15 (over two hours after he got the 8:00 a.m. pass), Immerfall told the plaintiff that the plaintiff was going to be put in restricted housing. Id. The plaintiff offered to give a blood sample, but

Immerfall refused. Id. At the restrictive housing unit, the plaintiff says, he offered to provide a urine sample, but the offer was declined. Id.

The plaintiff says that Immerfall wrote the plaintiff a major conduct report, alleging the plaintiff violated the rules for the "use of intoxicants." Id. at 6. The plaintiff explains that he asked for a hearing, denying that he'd used intoxicants. Id. Randy Mueller was appointed as the plaintiff's staff representative, but the plaintiff says that Mueller never contacted him, never informed him that Mueller was appointed to represent him, did not ask him whether he needed Mueller's assistance, and never talked to him prior to or during the disciplinary hearing. Id.

The plaintiff says that he was found guilty of use of intoxicants and stayed in segregation for twenty days, served thirty days' cell confinement and lost sixty days of recreation and canteen. Id. He also "had his prescribed pain medication, abruptly, stopped, causing severe withdrawal symptoms," and that he endured pain and suffering afterward. Id.

The plaintiff says that he was found guilty of violating Wis. DOC Admin. Rule 303.60, which he says requires prisoners to provide urine samples on request within two hours, regardless of any disability they may have that impedes their ability to urinate; an inability to urinate, the plaintiff says, will be treated as a refusal. Id. The plaintiff also says that disabled prisoners aren't allowed to give hair or blood samples in lieu of a urine sample if they can't urinate, and he asserts that "staff fraud and trickery is disregarded in the institution of this Rule." Id.

The plaintiff says that Berres and Foster gave him false information regarding the pollution, "to impede his access to courts." Id. at 7. He says that Clover, Berres, Foster and unknown individuals were deliberately indifferent to

5

the pain and suffering associated with breathing the toxic air. Id. He asks for an immediate injunction requiring the institution to stop burning paper, cardboard and plastic on prison grounds. Id. He wants an injunction ordering the prison to identify and disclose the sources of the toxic emissions. Id. at 8.

The plaintiff asks for damages against Bouzek for "retaliation, and cruel and unusual punishment." Id. He asks for damages against Immerfell for violating the Americans with Disabilities Act and being deliberately indifferent under the Eighth Amendment. Id. He seeks damages against Mueller for violating his due process rights to representation and impeding his right to defend himself. Id. The plaintiff asks for damages against Traxler "for cruel and unusual punishment for his actions in conjunction with Randall Bouzek." Id. He wants the court to order Waupun's health services unit to give him his pain medication. Id. He wants the court to reverse the finding of guilt on the conduct report. Id. He asks for damages against the Department of Corrections and its secretary, Kevin A. Carr, for violating the Americans with Disabilities Act and the Eighth Amendment. Id. at 9. Finally, he asks for an injunction requiring the Department of Corrections to change Rule 303.60 to protect disabled inmates from discrimination. Id.

　　C.　　Analysis

The plaintiff has alleged several unrelated (or possibly unrelated) claims against multiple defendants. Fed. R. Civ. P. 18(a) says that a party asserting a claim may join in a single complaint "as many claims as it has against an opposing party." So, if a plaintiff has five claims against defendant Smith, he may put all five of those claims in a single complaint against defendant Smith. Fed. R. Civ. P. 20(a)(2) says that a plaintiff may join more than one defendant in a single case if the plaintiff asserts a right to relief "against them jointly,

6

severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."

The plaintiff has made allegations against Foster, Clover, Berres and Bouzak regarding his assertion that he has been exposed to toxic emissions over the six-plus years he's been at Waupun.

He has asserted a claim that Bouzek and Traxler tricked him into emptying his bladder so that he couldn't produce a urine sample. He also says that Bouzek retaliated against him.

The plaintiff has asserted a claim that Immerfell discriminated against him by writing a conduct report despite the fact that the reason the plaintiff didn't provide a urine sample was because he couldn't; it also appears that the plaintiff is claiming that he is disabled and that Immerfell discriminated against him due to that disability.

The plaintiff has asserted a claim against Mueller for failing to provide him with adequate representation at the conduct hearing, thus violating his right to due process. (The court notes that since filing his complaint, the plaintiff has asked the court to dismiss Mueller as a defendant, because he doesn't think that Mueller's actions violated the constitution. The court will grant that motion.)

The plaintiff alleges that unnamed people deprived him of his pain medication, causing him to suffer.

Finally, he alleges that the Department of Corrections and its secretary, Kevin Carr, violated the Americans with Disabilities Act and the Eighth Amendment. He doesn't say what Carr did to him; he appears to sue Carr

simply because Carr is the secretary of the DOC, and because the plaintiff believes that Rule 303.60 is unfair and should be changed.

The plaintiff cannot bring these unrelated claims against unrelated defendants in a single lawsuit. "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [multi-claim, multi-defendant suits] produce[] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepaying of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). If the plaintiff wants to sue all these different people for all these claims, he must do so in separate lawsuits. The plaintiff may think that because all but one of the defendants works for the DOC (and that one defendant is an inmate in a DOC facility), the defendants are related and may be joined in a single case. Not so—for the plaintiff to be able to join defendants, his claims against those defendants must arise out of the same incident or occurrence and must involve a common question of law or fact. Nor is it enough for him to allege that people who ignored his complaints of exhaust fumes violated the Eighth Amendment, *and* people who forced him to try so hard to urinate that he soiled himself violated the Eighth Amendment, *and* people who deprived him of his pain medication violated the Eighth Amendment. If different people allegedly violated the Eighth Amendment at different times in different ways, the plaintiff must sue those people in different lawsuits.

The court is going to require the plaintiff to amend his complaint, to decide which of the several possible claims he wants to bring in *this lawsuit*. He then can bring the other claims in other lawsuits (assuming he wants to

pursue all of them). To avoid problems with the amended complaint, and with other complaints the plaintiff may file, however, the court notes several things.[1]

The plaintiff may decide that he wants to proceed in this lawsuit on his claim that he has been exposed to toxic emission fumes. This sounds like a claim that the plaintiff was subjected to unconstitutional conditions of confinement. To state a claim that the conditions of his confinement violated the Eighth Amendment, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials were deliberately indifferent to that injury, or to the risk of it. Farmer v. Brennan, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001).

The Eighth Amendment may protect inmates from being exposed to noxious air. See, e.g., Helling v. McKinney, 509 U.S. 25, 35 (1993) (intense exposure to tobacco smoke could constitute and "unreasonable risk of serious damage" to inmate health under the Eighth Amendment); Board v. Farnham, 394 F.3d 469, 486 (7th Cir. 2005) (inadequate ventilation system constituted objectively serious harm under Eighth Amendment). But even if the plaintiff asserts facts that show that his alleged exposure to fumes at Waupun posed an objectively serious risk to his health and safety, the plaintiff has not alleged who was responsible for that risk. He says only that he told Foster, Clover and

---

[1] The plaintiff already has another case pending, Mason v. Manlove, et al., Case No. 19-cv-992. The court has briefly reviewed that complaint, and has not yet determined whether it suffers from the same problems as the complaint in this case.

9

Berres about the fumes, and that when he told Berres, Bouzek was on duty and both Berres and Bouzek seemed very agitated about his claims. This isn't enough to show that these four defendants were deliberately indifferent; he doesn't say whether they had any power to do anything about the fumes, whether he asked them to do anything about the fumes, whether they tried to do anything about the fumes. The plaintiff alleges nothing other than that he complained about the fumes. Liability under §1983 is predicated on personal involvement in a deprivation, Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009), and plaintiff must provide more than conclusory allegations to state a claim, Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) (internal quotation marks omitted) ("Courts do not have to "accept as true legal conclusion[s, or t]hreadbare recitals of the elements of cause action, supported by mere conclusory statements.").

Perhaps the plaintiff instead will elect to proceed on his claim that Bouzek and Traxler tricked him into emptying his bladder to prevent him from being able to submit a urine sample. As far as the court can tell, the plaintiff appears to be alleging that Bouzek tricked him in retaliation for the plaintiff filing an inmate complaint about the fumes; this sounds like a First Amendment retaliation claim. To state a claim for retaliation, a plaintiff must allege (1) that he engaged in an activity protected by the First Amendment; (2) that he suffered a deprivation likely to deter First Amendment activity in the future; and (3) that the First Amendment activity was at least a "motivating factor" in the defendant's decision to take retaliatory action. Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008) (internal citation omitted).

The plaintiff engaged in a protected activity when he filed an inmate complaint. Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002). He

10

alleges that after he went through the complaint process, Berres came to talk to him and that Berres and Bouzek, the lead officer on the cell hall, were agitated with his complaints about the fumes. Dkt. No. 1 at 5. The plaintiff says that about a month after that, Bouzek used Traxler to trick the plaintiff into thinking that he was going somewhere other than to provide a urine sample, causing the plaintiff to empty his bladder which made him unable to provide a sample, which got him in trouble. If the plaintiff wants to proceed on this claim, he should be clear about the "deprivation" he suffered, and he should explain why he believes that his filing of the inmate complaint was a motivating factor in Bouzek tricking him into thinking he wasn't going to give a urine sample.

The court also notes regarding this claim that the plaintiff has sued Traxler, an inmate at Waupun. 42 U.S.C. §1983 allows a citizen who has been deprived of his rights under the federal Constitution or federal law to sue the person who deprived him of those rights, *if* the person was acting "under color of" state law. Generally, people employed by the state who are doing their state jobs are acting "under color of" state law. A private person, like a prison inmate, is liable for acting under color of state law only when he

> is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 . . . (1980). This requires "evidence of a *concerted effort* between a state actor and that individual." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 . . . (1970)). The plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 . . . (1982).

L.P. v. Marian Catholic High School, 852 F.3d 690, 696 (7th Cir. 2017). At this point, the plaintiff has not alleged sufficient facts to be able to state a claim against Traxler—a private citizen—relating to Bouzek's alleged retaliation.

The plaintiff may choose to proceed on a claim that Immerfell, the DOC and Secretary Carr violated the Americans with Disabilities Act ("ADA"). The ADA applies to prisons and prisoners. Cassidy v. Ind. Dep't of Corr., 199 F.3d 374, 375 (7th Cir. 2000). To state a claim under the ADA, a plaintiff must allege that "(1) he is a qualified person; (2) with a disability; and (3) the DOC denied him access to a program or activity because of his disability." Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 672 (7th Cir. 2012). Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities of an individual," or having a record of such an impairment or being regarded as having such an impairment. 42 U.S.C. §12102(1).

The plaintiff hasn't identified his "disability"—he says that he has prostate trouble, incontinence, and weakened bladder and kidney issues, but he doesn't explain whether these conditions are what he considers to be his disability. Even if those issues are what the plaintiff is referring to, and even if they qualify as a "disability under the statute," the plaintiff hasn't alleged that he has been denied access to a program or activity.

The plaintiff has alleged that the DOC and Carr violated the Eighth Amendment. Carr is an officer of an agency of the state—the DOC. Under §1983, '[a] suit against an officer of a state agency in his official capacity is a suit against the state, and the state is not a 'person' subject to suit under § 1983." Olson v. Schwochert, 783 F. App'x 614, 617 (7th Cir. 2019) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Kolton v. Frerichs,

869 F.3d 532, 535-36 (7th Cir. 2017)). If the plaintiff decides to pursue claims against Secretary Carr or the Department of Corrections—whether in this lawsuit or in another one—he cannot sue them for violating the Eighth Amendment under §1983.

Finally, the plaintiff has claimed that unnamed people denied him his pain medication. If the plaintiff chooses to pursue this claim—whether in this lawsuit or in a separate one—he will need to provide more information. What is the pain medication for? What happens when he doesn't take it? Who decided that he could not have it anymore? How long was he deprived of the pain medication? Without these facts, the court will not be able to determine that he has stated a claim.

## C. Motion for Emergency Court Action (Dkt. No. 8)

Finally, the plaintiff filed a motion for emergency court action, explaining that between August 30, 2019 and September 1, 2019, toxic exhaust fumes once again flowed into the cell hall where he is housed. Dkt. No. 8. After explaining that he has complained and filed this lawsuit, and telling the court that the institution has "explicitly" refused to "stop the poisoning of the plaintiff," the plaintiff asks the court "to act [immediately] to stop the illegal actions of the Waupun Correctional Inst. staff." Id. at 1-2. He asks the court to "promptly order WCI to stop burning toxic materials on prison grounds whereby those toxic emissions from the burning thereof flow into the prison living areas." Id. at 2. The court construes this as a motion for injunctive relief.

To obtain preliminary injunctive relief, whether through an injunction or a temporary restraining order, a plaintiff must show that (1) his underlying case has a reasonable likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the

13

injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If he shows those three things, the court then balances the harm to each party and to the public interest from granting or denying the injunction. Id.; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008).

A temporary restraining order is appropriate only if it seeks relief of the same character sought in the underlying suit and deals with a matter presented in that underlying suit. Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997) (citing De Beers Consol. Mines v. U.S., 325 U.S. 212, 220 (1945)); see also Omega World Travel v. TWA, 111 F.3d 14, 16 (4th Cir. 1997); Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (*per curiam*) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.") (citing Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1185 (10th Cir. 1975)); Alston v. City of Madison, 13-cv-635-bbc, 2014 U.S. Dist. LEXIS 106317, at *2 (W.D. Wis. Aug. 4, 2014) ("[T]he general rule is that a plaintiff may not obtain injunctive relief on issues that do not relate to the claims asserted in the complaint.").

As the court has noted, it is requiring the plaintiff to amend his complaint to decide which of his several claims he wishes to pursue in this lawsuit. In whichever suit he chooses to pursue his claims against the fumes, the plaintiff will need to show that he is likely to succeed on that claim against the people he has sued, that money won't fix the problem and that he will be irreparably harmed unless the court grants the relief he seeks. The court will

14

deny this motion without prejudice; the plaintiff may renew the motion if he chooses to pursue his claims about the fumes in this case. If he chooses to pursue those claims in a different case, he may bring a motion in that case.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion to dismiss a defendant from the lawsuit. Dkt. No. 7. Defendant Randy Mueller is **DISMISSED**.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for emergency court action. Dkt. No. 8.

The court **ORDERS** that by the end of the day on **April 10, 2020**, the plaintiff must file an amended complaint proceeding on only one of the several claims he has asserted. If, by the end of the day on April 10, 2020, the court receives from the plaintiff a complaint that complies with the requirements of this order, the court will screen it. If the court does not receive an amended complaint by the end of the day on April 10, 2020, it may dismiss the plaintiff's case for failure to diligently pursue it under Civil L.R. 41 (E.D. Wis.).

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the **$319.91** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the

plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

The court includes with this order a guide to filing prisoner cases and a blank complaint form.

Dated in Milwaukee, Wisconsin, this 13th day of March, 2020.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**