**JACKIE DELMAS MASON,**

               **Plaintiff,**

v.                                           Case No. 19-CV-1103

**CHARLES CLOVER,** *et al.*

               **Defendants.**

## DECISION AND ORDER

Plaintiff Jackie Delmas Mason, who is representing himself and confined at the Milwaukee County House of Correction, brings this lawsuit under 42 U.S.C. § 1983. Mason was allowed to proceed on a claim under the Eighth Amendment against defendants Charles Clover and Jeffrey Berres for allegedly allowing the Waupun Central Generating Plant to produce harmful pollution. Mason was also allowed to proceed against defendants Douglas Percy, James Muenchow, Tonia Moon, and Matthew Greenwood based on allegations that they ignored or improperly failed to address his inmate complaints regarding the pollution.

Mason filed four separate motions for summary judgment against the defendants. (ECF Nos. 45, 50, 54, 61.) The defendants filed one motion for summary judgment on all claims. (ECF No. 66.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 17.)

# FACTS

*Mason's Alleged Exposure to Pollution*

Mason alleges that when he was incarcerated at Waupun Correctional Institution, he "smelled and was sicken [*sic*] by being forced to breathe industrial scale exhaust emissions . . . coming from Waupun Correctional Institution's (WCI) Central Generating Plant (CGP)." (ECF No. 64, ¶ 1.) Starting in September 2019, Mason stated he "was forced to breathe polluted air in WCI cell halls" at least 138 times.[1] (*Id.*, ¶ 18.) Beginning in January 2020 he also "witnessed brown smelly smoke billowing out of the CGP chimneys at least 23 times.[2] It is undisputed that the CGP is only authorized to burn natural gas and #2 fuel oil. (ECF No. 72, ¶ 7.) However, Mason states that "[w]hen ink, paper, and plastic are burned, they emit a dark smelly smoke." (*Id.*, ¶ 11.) He also states that the defendants cannot produce evidence that they are properly disposing of bio-hazard waste, plastic, and paper. (*Id.*, ¶¶ 15, 17-18.) Because they cannot produce such evidence, according to Mason, "it stands to reason that these materials are being burned in the CGP and this is supported by the exhaust emissions being detected by Mason." (*Id.*, ¶ 16.) Mason also submits an affidavit from another prisoner stating that he believes he has been forced to breathe polluted air. (ECF No. 64 at 18.)

The defendants assert there is no evidence of air pollution at WCI. The Wisconsin Department of Natural Resources, which regulates operation of the CGP, regularly tests the emissions from the CGP. (ECF No. 68, ¶¶ 14-18.) In 2018, 2019,

---

[1] For a complete list of dates and times, see ECF No. 64, ¶ 18.
[2] For a complete list of dates and times, see ECF No. 64, ¶ 17.

2020, and 2021, all the results from the emissions test were within "normal range." (*Id.*, ¶¶ 19-22.) WCI staff also conducts an annual "stack 'opacity' testing" as required by Wisconsin law. (*Id.*, ¶ 23.) For the years 2018, 2019, 2020, and 2021, the testing showed that the CGP met the testing criteria and showed little to no visible emissions. (*Id.*, ¶¶ 28-29.) Additionally, third-party inspectors annually test and tune the boilers with the CGP, and during the relevant time period (2018-2021) all inspections and tune-ups returned routine and normal results. (*Id.*, ¶¶ 30-31.) During the relevant time period, the DNR never found the CGP noncompliant. (*Id.*, ¶ 33.) Mason asserts that the defendants have advanced notice of the inspections and testing, and "it is easy for the CGP to avoid detection of violating state rules and laws." (ECF No. 72, ¶ 23.) However, he does not provide details or explain what the defendants do to avoid detection.

The defendants also assert that it is impossible to burn anything other than natural gas or #2 fuel oil in the CGP. (ECF No. 68, ¶ 41.) According to the defendants, "[i]t is physically impossible to allow foreign material to enter the boilers because the fuel is pumped through a hole too small for waste to pass through [and they] are designed for liquid fuel and waste materials would not fit in the boiler fuel lines, they would become clogged, and the boilers would break down." (*Id.*, ¶¶ 41-42.)

The defendants also describe how bio-hazard waste, plastic, paper, and other garbage are disposed of at WCI. WCI uses contracted waste management companies. (ECF No. 68, ¶ 37.) WCI's garbage is collected by its maintenance department and taken daily or every-other-day to dumpsters on the edge of the town of Waupun. (*Id.*, ¶

3

38.) Two-to-three times per week GLF Environmental empties the dumpsters and hauls the waste to a landfill. (*Id.*, ¶ 38.) For bio-hazard waste, Stericycle collects and disposes of it monthly. (*Id.*, ¶ 39.) Recyclable waste, such as paper and plastic, is collected regularly by Aronson Recycling. (*Id.*, ¶ 40.)

*Mason's Complaints Regarding Air Pollution*

Mason asserts that he filed several inmate complaints that were rejected by defendant Muenchow without conducting a thorough investigation, including interviewing Mason. (ECF No. 64, ¶¶39-47.) The defendants assert that Muenchow properly investigated each complaint and properly rejected them, finding Mason's claims baseless. (ECF No. 68, ¶¶ 64-71.)

Similarly, Mason asserts that defendant Moon rejected three of his inmate complaints without talking to Mason or investigating whether WCI staff was burning unauthorized materials. (ECF No. 64, ¶¶ 30-38.) The defendants contend that Moon properly investigated and rejected those complaints. (ECF No. 68, ¶¶ 71-74.)

Mason further alleges that defendant Greenwood, when reviewing Mason's appeal of his inmate complaints, did not conduct an investigation. (ECF No. 64, ¶¶ 57, 65-66.) The defendants explain that because Mason's complaints were rejected, and Greenwood had no cause to conduct an investigation on the merits of Mason's complaint because his review was limited to whether the institution complaint

4

examiner had cause to reject the complaint pursuant to Wis. Admin. Code § DOC 310.10(6).[3] (ECF No. 68, ¶ 95.)

Mason also alleges that defendant Percy failed to investigate his concerns about air pollution after receiving a letter he wrote to non-defendant Department of Corrections Secretary Kevin Carr. (ECF No. 64, ¶¶ 69-75). Percy was tasked with responding to Mason's letter, and in his response he directed Mason to take up his concerns with the Warden. (ECF No. 68, ¶¶ 49-51.) Percy conferred with the Warden prior to responding to Mason. (*Id.*, ¶ 48.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the

---

[3] Complaints may be rejected if they were submitted in order to harass or cause emotional distress to a person; if the complaint does not raise any issue regarding policies or rules; if the complaint is frivolous; if it fails to provide sufficient information; if it was untimely; if the issue is moot; if it has already been addressed; if it is profane or abusive; or it contains a foreign substance. Wis. Admin. Code. § DOC 310.10(6)(a)-(i).

nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Eighth Amendment Claim Against Clover and Berres*

Mason claims that, because Clover and Berres were building and grounds management at WCI and in charge of the CGP (ECF No. 68, ¶¶3-5), they violated his Eighth Amendment rights by allowing the CGP to burn unauthorized materials. Under the Eighth Amendment, prisons must "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medication care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517 (1984)). "The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective

6

standpoint, sufficiently serious that it results 'in the denial of the minimal civilized measure of life's necessities' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While "exposing inmates to air pollution . . . may amount to deliberate indifference, failing to provide an environment 'completely free from pollution or safety hazards' is not actionable under the Eighth Amendment." *Maus v. Murphy*, 29 Fed. App'x 365, 369 (7th Cir. 2002) (quoting *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001)). Courts typically consider whether the pollution to which the plaintiff was exposed "fell substantially below the standard enjoyed by non-prisoners." *Id.*

Mason has not established that he was subjected to unsafe levels of air pollution. At most he provides assumptions based on speculation that he was exposed to air pollution; but he does not provide any support, scientific or otherwise, for his conclusions. While a non-movant "is entitled . . . to all reasonable inference in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Mason states he observed brown smelly smoke on several occasions. He then asserts that burning paper and plastic produces brown smelly smoke, and that the defendants failed to provide evidence demonstrating that they are *not* burning paper, plastic, and biohazard materials in the CGP. Therefore, he infers they must be burning unauthorized materials in the CGP.

Mason's conclusion is based on pure speculation and conjecture. He has no evidence that his observations of smelly brown smoke correlate to the burning of

7

unauthorized materials or unsafe levels of air pollution. For instance, Mason presented no evidence from WCI's third party waste management contractors (whose names and addresses the defendants provided to him) indicating that WCI staff was not properly disposing of waste.

And the defendants have produced substantial evidence, supported by affidavits and the actual inspection records (ECF Nos. 73-1 through 73-10) that they are not burning unauthorized materials in the CGP. The defendants detailed how garbage, recyclables, and bio-hazard waste are disposed of at WCI. They also explained how it would be impossible to burn solid materials in the CGP's boilers. They further detailed several instances in which the CGP passed air quality inspections. Mason's assertion that the defendants could somehow avoid detection of unsafe air quality in advance of the inspection is unfounded and pure speculation.

Mason also does not provide any evidence that he was harmed by the alleged air pollution. At most he states that the fumes caused him to feel sick. But he does not include any evidence that he visited the Health Services Unit or was treated for ailments caused by air pollution. "To recover damages under § 1983, a plaintiff must show both injury and 'a causal connection between that injury and a deprivation of a constitutionally protected right.'" *Maus*, 29 Fed. App'x at 369 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999)). Mason does not allege any injury whatsoever. Given the combination of unreasonable and speculative inferences, lack of injury, and substantial evidence indicating that the defendants were not burning

8

unauthorized materials, no reasonable factfinder could conclude that the defendants exposed Mason to an objectively serious level of air pollution.

Therefore, summary judgment is granted in favor of Clover and Berres.

*Claims against Muenchow, Moon, Greenwood, and Percy*

Mason claims that, by failing to investigate his inmate complaints or informal grievances concerning air pollution, defendants Muenchow, Moon, Greenwood, and Percy violated his constitutional rights. While simply denying grievances is not enough to state a constitutional violation*, see Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507, F.3d 605, 609 (7th Cir. 2007)), a complaint examiner violates the Constitution when he handles complaints or grievances with deliberate indifference, such as destroying a grievance without reading it. *See Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009). At screening, the court allowed Mason to proceed against these defendants because his allegations suggested they treated his complaints with deliberate indifference—specifically, that they threw them away or completely ignored them. However, it is now clear that Mason is claiming not that the defendants threw his complaints away or completely ignored them but that they failed to properly investigate and resolve his complaints. Prisoners have no constitutional right to an investigation of their grievances. *George*, 507 F.3d at 609. Therefore, summary judgment is granted in favor of Muenchow, Moon, Greenwood, and Percy.

## CONCLUSION

For the foregoing reasons, Mason's motions for summary judgment are denied and the defendants' motion for summary judgment is granted. The defendants also

9

argued they were entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the qualified immunity argument. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Masons' motions for summary judgment (ECF Nos. 45, 50, 54, 61.) are **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 66) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 22nd day of September, 2022.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge